B27 (Official Form 27) (12/09)

FILED APR 20'10 AM 9:22 USBC-GBO

# UNITED STATES BANKRUPTCY COURT
## Middle District of North Carolina

In re   Sherry Holder pfeiffer & Albert
        Pfeiffer
        _____
                  Debtor                                      Case No.  10-80160
                                                              Chapter   7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: GMAC

2. Amount of the debt subject to this reaffirmation agreement:
   $27,968.19 on the date of bankruptcy    $28,029.46 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: 8.00% prior to bankruptcy
   8.00% under reaffirmation agreement ( X Fixed Rate ___ Adjustable Rate)

4. Repayment Terms (if fixed rate): $764.95 per month for 42 months.
   *Does not include any additional payments necessary to cure existing defaults.*

5. Collateral, if any, securing the debt: Current market value: $23,275.00
   Description: N07 CHEVSILVERADO VIN 2GCEC13JX71543975

6. Does the creditor assert that the debt is nondischargeable? ___ Yes  X No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | | Debtor's Income and Expenses as Stated on Reaffirmation Agreement | |
|---|---|---|---|
| 7A. Total monthly income from Schedule I, line 16 | $5492.87 | 7B. Monthly income from all sources after payroll deductions | $4870.00 |
| 8A. Total monthly expenses from Schedule J, line 18 | $6052.22 | 8B. Monthly expenses | $4674.00 |
| 9A. Total monthly payments on reaffirmed debts not listed on Schedule J | $ | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses | $ |
| | | 10B. Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | $196.00 |

Sherry Holder pfeiffer & Albert Pfeiffer 10-80160

Case 10-80160   Doc 11   Filed 04/20/10   Page 1 of 13

11. Explain with specificity any difference between the income amounts (7A and 7B):
Sherry income based on 40 hour week - no overtime

12. Explain with specificity any difference between the expense amounts (8A and 8B):
Cut down expenses only buy necessities

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true correct.

_____          _____
Signature of Debtor (only required if              Signature of Joint Debtor (if applicable, and only
line 11 or 12 is completed)                              required if line 11 or 12 is completed)

Other Information

☐  Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:

_____

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
_____ Yes          __X__ No

If the debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
_____ Yes          _____ No

## FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on the Reaffirmation Agreement Cover Sheet.

_____
Signature

Jackie Berg
Creditor

Print/Type Name & Signer's Relation to Case

Sherry Holder pfeiffer & Albert Pfeiffer 10-80160

FILED APR 20'10 AM 9:22 USBC-GBO

Check one.
☐ **Presumption of Undue Hardship**
☐ **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation, Part II Below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Middle District of North Carolina

In re   Sherry Holder pfeiffer & Albert Pfeiffer,    Case No.   10-80160

           Debtor                                    Chapter   7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:**   GMAC

☐ Check this box if Creditor is a Credit Union

### I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this Reaffirmation Documents packet.**

1. Brief description of the original agreement being reaffirmed:   Auto – Contract
   *For example, auto loan*

2. **_AMOUNT REAFFIRMED_**:    $28,029.46

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before the date you sign this Reaffirmation Agreement.

   *See the definition of "Amount Reaffirmed" in Part V.C below.*

3. The **_ANNUAL PERCENTAGE RATE_** applicable to the Amount Reaffirmed is <u>8.00%</u>

   *See definition of "Annual Percentage Rate" in Part V.C below.*

   This is a (check one)   ☒ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

4. Reaffirmation Agreement Repayment Terms:

    ☒ If fixed term, $764.95 per month for <u>42</u> months starting on <u>2/16/2010</u>.
    ☒ If not fixed term, describe repayment terms: *In addition to the regular payments above, the existing payment defaults shall be cured as follows:*

| | | | |
|---|---|---|---|
| 1 payment of | $6.00 | due on or before | 2/16/2010 |
| 1 payment of | | due on or before | |
| 1 payment of | | due on or before | |

5. Describe the collateral, if any, securing the debt:

    Description:          N07 CHEVSILVERADO VIN 2GCEC13JX71543975
    Current Market Value:  $23,275.00

6. Did the debt that is being reaffirming arise from the purchase of the collateral described above?

    ☒ Yes    ☐ No
    If yes, what was the purchase price for the collateral?  $43,628.79
    If no, what was the amount of the original loan?

7. Detail the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

| | Terms as of the Date of Bankruptcy | Term After Reaffirmation |
|---|---|---|
| Balance due (including fees and costs): | $27,968.19 | $28,029.46 |
| Annual Percentage Rate: | 8.00% | 8.00% |
| Monthly Payment: | $764.95 | $764.95 * |

*Under the parties' current agreement, any existing payment defaults are immediately due and payable. However, pursuant to this reaffirmation agreement, Creditor is allowing the Debtor(s) to cure said defaults over time (see ¶ 4 Repayment Terms above).*

8. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

    _____

## II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

1. Were you represented by an attorney during the course of negotiating this agreement?

    Check one.    ☐ Yes   ☒ No

2. Is the creditor a credit union?

    Check one.    ☐ Yes   ☒ No

3. If your answer to EITHER question 1. or 2. above is "No" complete a. and b. below.

   a.. My present monthly income and expenses are:

   i. Monthly income form all sources after payroll deductions
   (take-home pay plus any other income                                $ 4870.00

   ii. Monthly expenses (including all reaffirmed debts except
   this one)                                                           $ 3909.05

   iii. Amount available to pay this reaffirmed debt (subtract ii. from i.)   $ 960.95

   iv. Amount of monthly payment required for this reaffirmed debt     $ 764.95

*If the monthly payment on this reaffirmed debt (line iv.) **is greater than** the amount you have available to pay this reaffirmed debt (line iii.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

   b. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or on me because:

   Check one of the two statements below, if applicable:

   ☑ I can afford to make the payments on the reaffirmed debt because my monthly income is greater than my monthly expenses even after I include in my expenses the monthly payments on all debts I am reaffirming, including this one.

   ☐ I can afford to make the payments on the reaffirmed debt even though my monthly income is less than my monthly expenses after I include in my expenses the monthly payments on all debts I am reaffirming, including this one, because: _____
   _____
   _____
   _____

   Use an additional page if needed for a full explanation.

4. If your answers to BOTH questions 1. and 2. above were "Yes," check the following statement, if applicable:

   ☐ I believe this reaffirmation agreement is in my financial interest and I can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

**III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES**

I (We) hereby certify that:

    i. I (We) agree to reaffirm the debt described above.

    ii. Before signing this reaffirmation agreement, I (we) read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

    iii. The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

    iv. I am (We are) entering into this agreement voluntarily and fully informed of my (our) rights and responsibilities; and

    v. I (We) have received a copy of this completed and signed Reaffirmation Documents packet.

SIGNATURE(S):

Date _3/20/10_     Signature _[signed]_ Debtor

Date _3/20/10_     Signature _[signed]_ Joint Debtor, if any

    If a joint reaffirmation agreement, both debtors must sign.

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor     _GMAC_             _P.O. Box 130424, Roseville, MN 55113_
             Print Name                               Address

            _K. Vang_               _[signed]_     _2/8/10_
Print Name of Representative             Signature        Date

**IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)**

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date _3/31/10_     Signature of Debtor's Attorney _[signed]_

              Print Name of Debtor's Attorney _Edward Bolt_

Sherry Holder pfeiffer & Albert Pfeiffer 10-80160

V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, detailed in Part B below, are not completed, the reaffirmation agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the reaffirmation agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this Reaffirmation Documents packet requiring signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required.

5. **Can you cancel the agreement?** You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this reaffirmation agreement be effective?**
   a. If you *were represented* by an attorney during the negotiation of your reaffirmation agreement
      i. if the creditor is not a Credit Union, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship in which case the agreement becomes effective only after the court approves it;

      ii. if the creditor is a Credit Union, your reaffirmation agreement becomes effective when it is filed with the court.

   b. If you *were not represented* by an attorney during the negotiation of your reaffirmation agreement, the reaffirmation agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing, at which time the judge will review your reaffirmation agreement. If the judge decides that the reaffirmation agreement is in your best interest, the agreement will be approved and will become effective. However, if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your reaffirmation agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the reaffirmation agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider the decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney section (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement *unless* your reaffirmation agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B240B to do this.

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The amount of debt includes any unpaid fees and costs arising on or before the date you sign this agreement that you are agreeing to pay. Your credit agreement may obligate you to pay additional amounts that arise after the date you sign this agreement. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this agreement.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage Rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

This Retail Installment Sale Contract consists of this, the Gap Protection (Debt Cancellation) Rider, and . This agreement contains ___ pages.

## CONSUMER RETAIL INSTALMENT SALE CONTRACT
## GMAC FLEXIBLE FINANCE PLAN

Dealer Number ___ Contract Number ___

| Buyer (and Co-Buyer) – Name and address (include county and zip code) | Creditor (Seller name and address) |
|---|---|
| ALBERT PFEIFFER<br>SHERRY HOLDER PFEIFFER<br>108 FALLINGLEAF DRIVE<br>RAEFORD NC 28376 HOKE | BAKER CHEVROLET-PONTIAC, INC.<br>914 E. 4TH AVE PO BOX 432<br>RED SPRINGS NC 28377-0432 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay us, the Creditor, the Amount Financed and Finance Charge according to the payment schedule shown below. We will figure the Finance Charge on a daily basis.

| New or Used | Year | Make and Model | Vehicle Identification No | Primary Use for Which Purchased |
|---|---|---|---|---|
| NEW | 2007 | CHEVROLET 1 SILVERADO 1 | 2GCEC13JX71543975 | XX personal, family, or household ☐ agricultural<br>☐ business ☐ |

Your trade-in is a. Year 2004 Make FORD TRUCK Model 150

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled | Total Sale Price<br>The total cost of your purchase on credit, including your downpayment of $ 0.00 is |
|---|---|---|---|---|
| 0.00 % | $1447.61 | $43628.79 | $55076.40 | $55076.40 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | Or as Follows |
|---|---|---|---|
| 72 | $ 764.95 | Monthly beginning 05/16/2007 | |

**Late Charge.** If a payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late. The charge will not exceed $6 if you bought the vehicle primarily for personal, family, household, or agricultural use

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty

**Security Interest.** You are giving a security interest in the vehicle being purchased

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, and security interest

### ITEMIZATION OF AMOUNT FINANCED

1 Cash price (including any accessories, services, and taxes) $ 39352.19 (1)
2 Total downpayment = (If negative enter "0" and see line 4H below)
   Gross trade-in $ 15000.00 -payoff by seller $ 20428.10
   = net trade-in $ 0.00 + cash $ N/A
   + other (describe) MANUFACTURER REBAT $ 2000.00 $ 0.00 (2)
3 Unpaid balance of cash price (1 minus 2) $ 39352.19 (3)
4 Other charges including amounts paid to others on your behalf (Seller may keep part of these amounts.)
   A Cost of optional credit insurance paid to the insurance company or companies
      Life $ N/A
      Disability $ N/A  $ N/A
   B Other insurance paid to the insurance company  $ N/A
   C Official fees paid to government agencies
      N/A  $ N/A
   D Government taxes not included in cash price
      N/A  $ N/A
   E Government license and/or registration fees  $ 34.50
   F Government certificate of title fees
      (includes $ N/A security interest recording fee)  $ 35.00
   G Other charges (Seller must identify who is paid and describe purpose )
      N/A  to N/A  $ N/A
      BAKER CHEVROL to DOC FEE  $ 279.00
      to GAP PROT$  $ 500.00
      N/A  to N/A  $ N/A
      N/A  to N/A  $ N/A
      N/A  to N/A  $ N/A
   H Net trade-in payoff to FORD MOTOR CREDIT $ 3428.10
   Total other charges and amounts paid to others on your behalf  $ 4276.60 (4)
5 Amount financed (3 + 4)  $ 43628.79 (5)

*Seller may keep part of these amounts*

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit. Your decision to buy or not to buy other insurance will not be a factor in the credit approval process

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions

Check the insurance you want and sign below:
**Optional Credit Insurance.**
☐ Credit Life   ☐ Buyer   ☐ Co-Buyer   ☐ Both
☐ Credit Disability (Buyer Only)
Premium.
   Credit Life $ N/A
   Credit Disability $ N/A
N/A
   (Insurance Company)
N/A
   (Home Office Address )

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

**Other Insurance.**

☐ N/A                                    N/A
   Type of Insurance          Term
Premium $ N/A
N/A
   (Insurance Company)
N/A
   (Home Office Address)
I want the insurance checked above

X _____
Buyer Signature          Date
X _____
Co-Buyer Signature       Date

ANY INSURANCE REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and we and you must sign it. No oral changes are binding.

Buyer Signs X _____ Co-Buyer Signs X _Sherry Holder Pfeiffer_

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others

See back for other important agreements.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _____ Date 04/16/2007    Co-Buyer Signs X _Sherry Holder Pfeiffer_ Date 04/16/2007

**Co-Buyers and Other Owners.** A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract

Other owner signs here X _____ Date _____ Address _____

Creditor Signs BAKER CHEVROLET-PONTIAC, Date 04/16/2007 By X _____ Title _____

| Seller assigns its interest in this contract to ☒ GMAC ☐ Nuvell National Auto Finance ☐ GMACAB ☐ Nuvell Credit Company, under the terms of Seller's agreement(s) with assignee |
|---|

| Assigned with recourse | | | Assigned without recourse or with limited recourse BAKER CHEVROLET-PONTIAC | | |
|---|---|---|---|---|---|
| Seller | By | Title | Seller | By | Title |

Z109 FR-NC 9/2006 (For use in the State of North Carolina) (Page 1 of 4)
Copyright 2006 GMAC All Rights Reserved.

ORIGINAL

## OTHER IMPORTANT AGREEMENTS

### 1. FINANCE CHARGE AND PAYMENTS

a. **How we will figure Finance Charge.** The Finance Charge is figured on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

b. **How we will apply payments.** We will apply each payment first to the earned and unpaid part of the Finance Charge, and then to the unpaid part of the Amount Financed

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due

### 2. YOUR OTHER PROMISES TO US

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing

b. **Using the vehicle.** You agree not to remove the vehicle from the U S or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it

c. **Security Interest.** You give us a security interest in.
   1. The vehicle and all parts or goods installed in it,
   2. All money or goods received (proceeds) for the vehicle;
   3. All insurance, maintenance, service, or other contracts we finance for you; and
   4. All proceeds from insurance, maintenance, service, or other contracts we finance for you This includes any refunds of premiums or charges from the contracts

This secures payment of all you owe on this contract It also secures your other agreements in this contract You will make sure the title shows our security interest (lien) in the vehicle

d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we decide, buy physical damage insurance If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest If we buy either type of insurance, we will tell you which type and the charge you must pay The charge will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on the front of this contract.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe

### 3. YOU MAY PREPAY

You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment

### 4. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means
   1. You do not pay any payment on time,
   2. You start a proceeding in bankruptcy or one is started against you or your property, or
   3. You break any agreements in this contract

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted

c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs, as the law allows.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem Your right to redeem ends when we sell the vehicle

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle

We will apply the money from the sale, less allowed expenses, to the amount you owe Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it Attorney fees and court costs the law permits are also allowed expenses If any money is left (surplus), we will pay it to you. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us If you do not pay this amount when we ask, we may charge you interest at the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe

h. **Dishonored check charge.** If you try to pay any portion of an amount you owe with a check that is dishonored, you will have to pay a charge of $25.

### 5. WARRANTIES SELLER DISCLAIMS

Unless the Seller makes an express warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide

### 6. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation:
Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

### 7. APPLICABLE LAW
Federal law and North Carolina law apply to this contract

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, household or agricultural use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims, or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

MVR 191 (Rev 06 06)

# CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 2GCEC13JX71543975 | 2007 | CHEV | TK |
| TITLE NUMBER | | TITLE ISSUE DATE | PREVIOUS TITLE NUMBER |
| 775388071135032 | | 05/03/2007 | |

MAIL TO:
GMAC
PO BOX 8132
COCKEYSVILLE MD 21030-8132

ODOMETER READING: 000004
ODOMETER STATUS:
TITLE BRANDS:

SHIPPING WEIGHT
4063

OWNER(S) NAME AND ADDRESS

ALBERT PFEIFFER
SHERRY HOLDER PFEIFFER
108 FALLING LEAF DR
RAEFORD NC 28376-5484

The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of this Division of the day and year appearing on this certificate as the title issue date.

COMMISSIONER OF MOTOR VEHICLES

FIRST LIENHOLDER    DATE OF LIEN 04/16/2007
GMAC
PO BOX 8132
COCKEYSVILLE MD 21030-8132

LIEN RELEASED BY
SIGNATURE _____
TITLE _____ DATE _____

SECOND LIENHOLDER    DATE OF LIEN

LIEN RELEASED BY
SIGNATURE _____
TITLE _____ DATE _____

THIRD LIENHOLDER    DATE OF LIEN

LIEN RELEASED BY
SIGNATURE _____
TITLE _____ DATE _____

FOURTH LIENHOLDER    DATE OF LIEN

LIEN RELEASED BY
SIGNATURE _____
TITLE _____ DATE _____

ADDITIONAL LIENS

84483158

032 T1C0323



FILED APR 20'10 AM 9:22 USBC-GBO

P.O. Box 130424
Roseville, MN 55113
(800) 495-1578
Fax: (651) 367-2005

April 16, 2010

Clerk of Bankruptcy Court
PO Box 26100
Greensboro, NC 27420

    Re: *In re Sherry Holder pfeiffer & Albert Pfeiffer*
        Bky. No. 10-80160
        Our Acct. No. 023-9099-40120

Dear Clerk of Court:

   Enclosed herewith for filing in the above case, please find a Reaffirmation Agreement filed on behalf of GMAC. Please return a file-stamped copy of the Reaffirmation Agreement in the enclosed self-addressed stamped envelope. Thank you for your cooperation.

                      Yours very truly,

                      GMAC

                By *[signature]*
                  J. Berg
                  Extension 2012

Encl.